STEIN v. PACKARD MOTOR CAR CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—CLAIM NEED NOT BE IN WRITING.
    It is not necessary that a claim for compensation under the workmen's compensation act (part 2, § 15, 2 Comp. Laws 1915, § 5445) be made in writing.

2. SAME—CLAIM• BARRED AFTER SIX MONTHS.
    A claim for compensation under said act not made until more than nine months after the accident is barred by the terms of the statute, which requires a claim to be made within six months.

3. SAME—LIMITATIONS—NOTICE—ESTOPPEL.
    Where plaintiff, after receiving medical and hospital treat-

On the question as to time within which notice must be given or other steps taken in action for injuries under Workmen's Compensation Acts, see notes in L. R. A. 1916A, 86 and 244, L. R. A. 1917D, 138.

ment at defendant's expense, returned to work on the eighth day after the accident, and, in response to his query as to what defendant was going to do about it, was correctly informed by defendant's physician who treated him that he was entitled to nothing under the law, as he had not been out of work two weeks, it cannot be said that what was said amounted to a claim for compensation under the law, or that defendant, by reason of its knowledge of the injury and its treatment of plaintiff, was estopped from relying upon the limitation imposed by the statute.

Certiorari to Industrial Accident Board.    Submitted April 23, 1920.    (Docket No. 90.)    Decided June 7, 1920.

Charles Stein presented his claim for compensation against the Packard Motor Car Company for injuries received in defendant's employ.    From an order awarding compensation, defendant brings certiorari. Reversed, and order vacated.

*Beaumont, Smith & Harris,* for appellant.

*Behr & Coolidge,* for appellee.

BROOKE, J.    On March 4, 1918, claimant received an accidental injury arising out of and in the course of his employment.    The injury consisted in the breaking of both bones of the left forearm.    Claimant was at once taken to the office of Dr. George, at the company's plant.    (Dr. George devotes his time to the treatment of defendant's injured employees and is in charge of defendant's compensation department.) The arm was put in a splint and was set the following day at Harper hospital under a fluoroscope.    Claimant carried his arm in a cast.

On the 8th day after the injury, he returned to work and from that time up to the date of the hearing before the industrial accident board he continued in

the employment of the defendant, earning wages as great as or greater than he received at the date of his injury. He made a claim in writing for compensation on December 10, 1918—nine months and some days after the receipt of the injury. Interrogated with reference to the written notice, he testified:

"*Q.* Was that the first one?  *  *  *
"*A.* Yes, sir.  *  *  *
"*Commissioner Reaves:* Yes, 1918. There is our stamp as we received it there, just to identify it. Did you ever make any claim to the Packard Motor Car Company prior to the time that you sent this in?

"*A.* No, before that I asked Dr. George what he could do about it and he said he didn't think he could do nothing so I went back to work. I said I couldn't lay around ten weeks and accept $2 a week and so I went back to work and put in my time.

"*Q.* What did you say at that time?

"*A.* I asked him what they could do for the time I lost. He said they wouldn't do anything on account of not being off two weeks. I says I can't lay off. I says my arm is in a cast and I can just as well sit there as sit home so I went out there and did all I could with one hand and got my pay for it.

"*Q.* Do you remember the exact words you used at that time to Dr. George?

"*A.* That is about what I told him.

"*Q.* Asked him what they were going to do about it?

"*A.* I asked him what they were going to do about the time I lost. He said I didn't lay off two weeks. I said, 'I can't lay off two weeks just to wait for it,' and so I went in on the 8th day.

"*Q.* Did you ever say anything about it to him after that?

"*A.* No, he is the only man I talked with about it. He told me that. That is all I thought I could get.

"*Q.* After December 10, you filed your claim with us?

"*A.* Yes.

"*Q.* Did you file claim at the same time with the Packard Motor Car Company?

"*A.* Yes, sir.

"*Q.* Filed the original with them and copy with us?

"*A.* Yes, sir.

"*Q.* I think that is all.

"*By Mr. Smith:* *Q.* In your affidavit, Mr. Stein, is that your signature there (indicating)?

"*A.* Yes.

"*Q.* Do you remember signing that at Mr. Coolidge's request?

"*A.* Yes.

"*Q.* In this affidavit you say:

" 'Plaintiff further states that he was informed by said Dr. George and likewise by an expert surgeon called in for consultation by said respondent that the chances for success and of said proposed operation were far from sure. Plaintiff further states that at this time he first became aware of the fact that his injury was permanent and that the condition of his arm would not improve; that he thereupon refused to submit to such operation and promptly thereafter served and filed notice of claim for injury authorized under the compensation law of the State of Michigan.'

"This notice which has been called to your attention; you recall swearing to this in your affidavit?

"*Mr. Coolidge:* Is that sworn to?

"*Q.* Stated; you recall signing that statement?

"*A.* Yes.

"*Q.* And that is the first time you filed any notice with the Packard Motor Car Company or with the accident board under the compensation law?

"*A.* Yes, sir.

"*Arbitrator Joncas:* What is the date of that statement?

"*Q.* The statement is dated the 8th of February, 1919, and notice of the claim was dated December 10, 1918. That is your signature there?

"*A.* Yes, sir.

"*Q.* And that is the notice that was served on the Packard Motor Car Company at that time?

"*A.* Yes, sir.

"*Q.* And all you talked with Dr. George about just about the time of the accident was about your loss of time, as you stated?

"*A.* Yes, that is all.

"*Q.* Now,—

"*A.* I didn't know at that time the way the arm was going to come out.

"*Q.* No, you didn't know that until after this session at the hospital when you talked about the operation?

"*A.* Yes, sir.

"*Q.* That is the first time you thought you ought to file claim against the company?

"*A.* He gave me good advice my arm would be all right so I went by his instructions thinking it would turn out that way.

"*Q.* If it had turned out and you hadn't found out you couldn't get a guaranteed operation you didn't have any intention of making a claim as you did, in other words?

"*A.* No, if I could use all my arm.

"*Q.* And the first time you got around and determined you wanted to make a claim was when they told you they couldn't guarantee it and you made up your mind you didn't want to take a chance on the operation?

"*A.* Yes.

"*Q.* Now, I notice in this first part of December there is quite a little time lost there. Were you away or did you stop work or what was that lay-off?

"*A.* December after the accident?

"*Q.* Yes.

"*A.* Yes, I had sickness at home in the family.

"*Q.* So you say that lay-off in the latter part of November and first of December was due to that sickness?

"*A.* Yes.

"*Q.* That is all."

Touching the same point, Dr. George testified as follows:

"*Q.* How long was Mr. Stein off at the time of the injury—off work—as far as you know?

"*A.* About a week.

"*Q.* Did you have any conversation with him at that time about the injury and about his working?

"*A.* Yes, he asked me if he was getting pay for the time he was losing and I told him no and that the compensation law did not apply unless he was out two weeks, and he suggested—while he thought the company ought to give him something because it wasn't

his fault that he got hurt—under the circumstances he thought the best thing for him to do was to return to work if they would allow him to work out there at such work he could do with the plaster cast on.

"Q. Did he go back to work then?

"A. Yes, about a week after the arm was broken.

"Q. That is inside of two weeks he went back?

"A. Oh, yes, inside of two weeks he went back.

"Q. Did he state anything to you indicating any intent to make claim against the Packard for injury?

"A. No, he seemed satisfied. He was cared for right along."

Defendant having denied liability, an arbitration was held, which resulted in a denial of relief to claimant, the committee holding:

"* * * Charles Stein is not entitled to receive and recover compensation from said respondent, Packard Motor Car Company, as no claim for compensation was made within six months of the accident."

The statute—section 15, part 2, of the workmen's compensation law (2 Comp. Laws 1915, § 5445)—provides:

"No proceedings for compensation for an injury under this act shall be maintained, * * * unless the claim for compensation with respect to such injury shall have been made within six months after the occurrence of the same." * * *

The act does not in terms require that the claim for compensation be made in writing and this court has never so held. It is undisputed upon this record that no written claim for compensation was made by claimant until December 10, 1918, too late to comply with the statute; but it is urged that the conversation between claimant and Dr. George, as testified to by claimant, constitutes such a claim for compensation as would satisfy the statute, and it was so held by the board on appeal.

We are unable to agree with this holding. It seems

quite plain, upon a perusal of this testimony, that what claimant was seeking at that time was knowledge as to whether he would be paid for the time he was losing (seven days had already elapsed) and he was properly advised by Dr. George that under the law he would not be paid for that lost time, it being less than two weeks. It seems quite clear that he determined to make a claim for compensation only after he had refused to submit to an operation, for he testified:

"*Q.* And the first time you got around and determined you wanted to make a claim was when they told you they couldn't guarantee it and you made up your mind you didn't want to take a chance on the operation?

"*A.* Yes."

We must hold, without considering the other two questions raised by appellant, that claimant is entitled to no relief. *Brown* v. *Weston-Mott Co.*, 202 Mich. 592; *Rubin* v. *Fisher Body Corp.*, 205 Mich. 605.

The claim that the defendant should be held to be estopped from urging claimant's failure to make his claim seasonably is without merit. Nothing was done by the defendant or any of its officers by act or word, so far as this record discloses, to induce claimant to withhold the filing of his claim. Defendant gave him employment as soon as he was able to perform his work and paid him as much or more than he received before. It afforded him the best medical attention possible. These humanitarian acts surely should not be held to work an estoppel in favor of claimant and against defendant.

The award of the board is reversed and held for naught.

MOORE, C. J., and STEERE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.